ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

FEB 13 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ATLANTA NATIONAL LEAGUE BASEBALL CLUB, INC., <br><br> Plaintiff, <br><br> vs. <br><br> HARTFORD LIFE INSURANCE COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> **RWS** <br><br> CIVIL ACTION NO. <br><br> **1 09-cv-0403** |

## COMPLAINT FOR BREACH OF CONTRACT

### (Jury Trial Demanded)

Plaintiff Atlanta National League Baseball Club, Inc., hereby files this Complaint, and respectfully shows the Court as follows:

### INTRODUCTION

1.

This is a complaint for breach of contract filed by Atlanta National League Baseball Club, Inc., the owner and operator of the Atlanta Braves, a Major League Baseball team (also referred to herein as the "Atlanta Braves" or "Braves") against Defendant Hartford Life Insurance Company ("Hartford Life") for insurance

policy benefits owed to the Braves under a policy insuring against the disability of a former Braves' player, pitcher Michael W. ("Mike") Hampton. By this lawsuit, the Braves seek compensatory damages from Hartford Life in an amount of $4.82 million, plus interest, for the time Mr. Hampton was disabled during the 2008 Major League Baseball season.

## PARTIES, JURISDICTION, AND VENUE

2.

Plaintiff Atlanta National League Baseball Club, Inc., is incorporated under the laws of the State of Georgia, with its principal place of business in Atlanta, Fulton County, Georgia. Atlanta National League Baseball Club, Inc., operates the Atlanta Braves, a Major League Baseball team.

3.

Defendant Hartford Life is an insurance company organized under the laws of Connecticut, with its principal place of business located at 200 Hopmeadow Street, Simsbury, Connecticut, 06089. Hartford Life is an admitted insurance carrier authorized to do business, and which regularly transacts business, in the State of Georgia, including within this judicial district. Hartford Life can be served with process through its registered agent, Corporation Service Company, 40 Technology Parkway South, No. 300, Norcross, Georgia, 30092.

US2008 573962

4.

This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1332. Complete diversity of citizenship exists between the parties, and the amount in controversy is in excess of $75,000 (Seventy-Five Thousand Dollars and No/100), exclusive of interest and costs.

5.

Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (c).

**THE HARTFORD LIFE POLICY**

6.

Hartford Life issued to the Colorado Rockies (the "Rockies," a Major League Baseball team), Policy No. AGP-1996-01, effective December 28, 2000 (the "Policy"). The Policy was assigned to the Atlanta Braves, with Hartford Life's written approval and consent, effective on November 16, 2002. The Braves were obligated to, and did, pay the specified premiums set forth in the Policy after the assignment.

7.

In exchange for the premiums paid by the Braves under the Policy, the Policy required Hartford Life to make "Daily Benefit" payments to the Braves, in specified amounts, in the event that Mr. Hampton became "Totally Disabled"

pursuant to the terms of the Policy. In particular, the Policy states that "If [Mr. Hampton] becomes Totally Disabled as the result of an Injury or Sickness while his services are covered under the Policy, We will pay the Amount of Benefit due for the period of Total Disability." The Policy required Hartford Life to continue to make such "Daily Benefits" payments so long as Mr. Hampton remained "Totally Disabled" under the terms of the Policy. The phrase "Total Disability" or "Totally Disabled" is defined to mean

> disability which (a) is the result of the Injury or Sickness of a Sports Professional whose services are insured under the Policy; (b) wholly and continuously prevents the Sports Professional from Participating in his Occupation subject to the Break in Disability; (c) causes [the Braves] to lose the services of the Sports Professional during the Waiting Period and the period for which Total Disability Benefits are payable; and (d) requires the Sports Professional to be under the regular care of a Physician.

8.

In addition, the Policy contains a provision stating that "Recurrent periods of Total Disability, separated by a period of time during which the Sports Professional is able to Participate in his Occupation, will be considered one period of Total Disability if [they are] due to the same or related medical causes; and (b) separated by less than the period of time shown in the schedule as the Break in Disability Period." The applicable "Break in Disability" under the Policy is "[a]n aggregate of 45 Regular Season or Post Season days."

4

9.

The Policy contains an "Expiration Date" of October 1, 2005. However, the Policy also provides that "Benefits will remain in effect after the Expiration Date of Coverage if [Mr. Hampton's] Total Disability commenced during the Coverage Period; (b) the Maximum Benefit has not been exceeded; and (c) coverage has not been terminated for non-payment of premium." Each of these conditions is satisfied. Thus, the Policy remained in effect beyond October 1, 2005.

10.

The Policy also contains a "Rehabilitation Benefit" that is payable under certain circumstances once the "Sports Professional" is no longer "Totally Disabled." Under the "Rehabilitation Benefit," Hartford Life is required to pay 100% of the "Total Disability Amount of Benefit while the Sports Professional is on Rehabilitative Assignment to the team's Minor League Affiliate," for up to 30 Regular Season Days.

11.

The Policy contains an arbitration provision. However, arbitration provisions in insurance policies generally are void under Georgia law and, in any event, Hartford Life has agreed in writing to waive this arbitration provision.

## MR. HAMPTON'S "TOTAL DISABILITY"

12.

Mr. Hampton became "Totally Disabled," as defined by the Policy, before October 1, 2005. Mr. Hampton remained "Totally Disabled" through most of the 2008 Major League Baseball season. Mr. Hampton was activated from the "disabled list" on or about July 26, 2008. During this time, Mr. Hampton did not pitch in a Major League regular season game.

13.

To the extent Hartford Life contends Mr. Hampton was no longer "Totally Disabled" before or during the 2008 season prior to his activation from the disabled list—which is an incorrect contention—the "Recurrent Periods of Total Disability" clause nevertheless provides coverage under the Policy. Under that clause, such recurrent periods are considered one period of "Total Disability."

14.

Hartford Life made "Daily Benefit" payments under the Policy for the 2006 and 2007 Major League Baseball seasons, after expiration of the applicable "Waiting Period," as described above. However, Hartford Life has failed and refused to make any payments under the Policy relative to the 2008 season.

US2008 573962

# COUNT ONE - BREACH OF INSURANCE CONTRACT

15.

The Braves incorporate by reference paragraphs 1 through 14 above, as if fully set forth herein.

16.

Under the terms and conditions of the Policy, Hartford Life owes the Braves the "Daily Benefits" identified under the Policy: $41,208.79 per "Regular Season day" in 2008 that Mr. Hampton was "Totally Disabled," or for which "Rehabilitation Benefits" are owed. Harford Life owes this payment for 117 Regular Season days during the 2008 season, until July 26, 2008, the day on which Mr. Hampton was removed from the disabled list.

17.

The Braves have complied in full with all conditions precedent and other requirements for coverage under the Policy. In particular, the Braves made timely premium payments, provided timely and effective notice, and have fully cooperated with Hartford Life's factual investigation of the Braves' claim. The Braves have otherwise complied will all other requirements under the Policy.

US2008 573962

18.

By failing to pay the "Daily Benefits" set forth in the Policy, including without limitation any "Rehabilitation Benefit," Hartford Life is in breach of its obligations under the Policy.

19.

As a direct and proximate result of its contractual breaches, Hartford Life has deprived the Braves of the benefit of insurance coverage provided under the Policy. As a result, the Braves have suffered losses in an amount to be proved at trial, but which approximate $4.82 million, not including interest. Further, the Braves will be forced to incur substantial, additional costs and fees to enforce their contractual rights in this action.

## PRAYER FOR RELIEF

WHEREFORE, the Braves respectfully pray that:

(1) The Braves be awarded damages for breach of contract under Count One of this Complaint in an amount of approximately $4.82 million, plus applicable interest;

(2) The case be tried to a jury; and

(3) The Braves be awarded such other and further relief as the Court deems equitable and just.

## JURY TRIAL DEMANDED

The Braves hereby request a trial by jury in this matter.

Respectfully submitted this 13th day of February, 2009

*signature*

Caroline W. Spangenberg
Georgia Bar No. 669055
Brent W. Brougher
Georgia Bar No. 086373
Jonathan Palmer
Georgia Bar No. 453452

**KILPATRICK STOCKTON LLP**
1100 Peachtree Street
Suite 2800
Atlanta, GA 30309
(404) 815-6500
(404) 815-6555
cspangenberg@kilpatrickstockton.com
bbrougher@kilpatrickstockton.com
jpalmer@kilpatrickstockton.com

*Attorneys for Atlanta National League Baseball Club, Inc.*